IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

GEORGE F. MYERS, JR.,

        Defendant.

No. 20-3069-01-CR-S-BCW

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1.     **The Parties.**  The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, and Casey Clark, Assistant United States Attorney, and the defendant, George F. Myers, Jr. ("the defendant"), represented by Erica Mynarich, of Carver, Cantin, and Mynarich, LLC.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2.     **Defendant's Guilty Plea.**  The defendant agrees to and hereby does plead guilty to the sole count of the Information charging him with a violation of 18 U.S.C. § 1341, that is, mail fraud. The defendant also agrees to forfeit to the United States the currency and property described

in the forfeiture allegation of the Information. By entering into this plea agreement, the defendant

admits he knowingly committed this offense, and is in fact guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the

offense to which he is pleading guilty are as follows:

> Beginning on an unknown date, but at least as early as March 2015, and continuing through July 2015, in Christian and Taney counties, within the Western District of Missouri, and elsewhere, the defendant, George F. Myers, Jr., devised and executed a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, from Invacare Corporation and Drive DeVilbiss Healthcare.

> During this time, the defendant was a resident of Taney and Christian counties, which were locations in the Western District of Missouri. The defendant had a biological son, M.M., who was stationed in Germany from 2013 through November 2016 as a part of his duties with the United States Army.

> Invacare Corporation ("Invacare") was an Ohio corporation, originally registered with the Ohio Secretary of State's Office on March 23, 1971, through registration and charter number 408542, with a principal place of business located in Elyria, Ohio, a location within the Northern District of Ohio. During the time of the defendant's scheme, Invacare manufactured and distributed medical and health care equipment. Invacare operated distribution centers for its medical and health care equipment in North Ridgeville, Ohio, and Cranbury Township, New Jersey.

> Medical Depot, Inc., doing business as "Drive DeVilbiss Healthcare" ("Drive"), was a Delaware corporation, originally registered with the Delaware Department of State, Division of Corporations, and later registered as a foreign business corporation with the New York Department of State, Division of Corporations, through registration number 2512833, with a principal place of business located in Port Washington, New York, a location within the Eastern District of New York. During the time of the defendant's scheme, Drive manufactured home health care medical equipment.

> Con-way Freight ("Con-way") was a motor carrier company that provided freight services throughout North America. Con-way was formed in 1983 and its headquarters was located in Ann Arbor, Michigan. On October 31, 2015, Con-way was acquired by XPO Logistics, which was headquartered in Greenwich, Connecticut. During the time of the defendant's scheme, Con-way operated as a commercial interstate carrier within and between multiple states of the United States. As such, Con-way was a "commercial interstate carrier" as referenced in Title 18, United States Code, Section 1341.

> As a part of the defendant's scheme, he represented to Invacare and Drive that he was acting on M.M.'s behalf and applied for credit in M.M.'s name with each business. Invacare and Drive relied on such representation in approving credit for the defendant to

2

use in obtaining medical equipment and supplies from each company. The defendant made these applications and regularly communicated with, and made misrepresentations to, each business from his place or places of residence in the Western District of Missouri. The defendant made representations to each business that he then well knew were false, including that he was M.M. and that he was going to send, or had sent, checks in the mail for payment for such equipment and supplies, all the while knowing that such statements were false.

As a part of this scheme, the defendant created Myers Companies, LLC ("Myers Companies"), a Missouri limited liability company, and registered it with the State of Missouri on March 11, 2015. The State of Missouri assigned it a charter number of LC001438962. The defendant listed his son, M.M., as the company's registered agent. The defendant stated in filing to the State of Missouri that the business was located in Ozark, Missouri, a location in Christian County and in the Western District of Missouri. The defendant also listed in the company's Articles of Organization that its purpose was to distribute medical equipment and services. The defendant was listed as an organizer of the entity and he stated in the document that M.M. had an e-mail address of 02servicesofkansas@gmail.com.

As a further part of his scheme, and in order to continue such scheme and conceal the discovery of it, the defendant committed the following actions:

     a.     The defendant submitted a Customer Credit Application to Invacare on March 25, 2015. The defendant submitted the application using the name and purported signature of M.M., when in fact such signature was forged and M.M. did not authorize the use of his name or signature for such application. Thereafter, from March 31, 2015, through June 22, 2015, said dates being approximate, Myers Companies, through the defendant, requested and Invacare delivered to Myers Companies certain medical equipment and supplies.

     b.     The defendant engaged in several telephone conversations with Invacare representatives in which the defendant represented himself to be M.M. or acting on M.M.'s behalf concerning the following topics: i) approval to run M.M.'s personal credit for the Customer Credit Application process; and ii) the status of Myers Companies' payment for the equipment and supplies sent by Invacare.

     c.     The defendant represented to Invacare that Myers Companies had been awarded a large hospice contract requiring the medical equipment and supplies that Myers Companies would purchase from Invacare and that if orders placed with Invacare were put on hold or not fulfilled by Invacare, Myers Companies would lose the contract. These statements, as the defendant then and there knew, were untrue and were made to induce Invacare to send more equipment to the defendant without requiring upfront payment.

     d.     In May 2015, the defendant represented to Invacare that Myers Companies had sent a payment of $75,000 to Invacare. The defendant knew this statement was

3

false and he made it to induce Invacare to send more equipment to the defendant despite the fact he had not paid what was then due to Invacare. Invacare never received the purported check.

e.      In early June 2015, the defendant, acting as M.M., represented to Invacare that Myers Companies had sent a payment of $125,000 to Invacare. The defendant further e-mailed an Invacare representative a copy of the purported check the defendant had sent. These statements, as the defendant then and there knew, were untrue and were made to induce Invacare to send more equipment to the defendant despite the fact he had not paid what was then due to Invacare. Invacare never received the purported check.

f.      The defendant induced Invacare to send further medical equipment to him after and through these untrue statements and did receive such further medical equipment from Invacare, despite not paying for such equipment.

g.      The defendant submitted an account application to Drive on March 18, 2015. The defendant submitted the application using the name and purported signature of M.M., when in fact such signature was forged and M.M. did not authorize the use of his name or signature for such application. Thereafter, from April 2015 until May 2015, Myers Companies, through the defendant, requested, and Drive delivered to Myers Companies, certain medical equipment and supplies.

h.      The defendant received such medical equipment from Drive through his untrue statements and despite not paying for such equipment.

i.      Through the defendant's fraudulent actions above, the defendant caused numerous medical equipment and supplies to be delivered to him from Invacare, by Con-way Freight from North Ridgeville, Ohio, and Cranbury Township, New Jersey, to Ozark, Missouri, and Pittsburg, Kansas, through numerous deliveries through interstate commerce.

j.      Specifically, for the purpose of carrying out the scheme, on and between June 5, 2015, and June 12, 2015, the defendant, in the Western District of Missouri, knowingly caused to be used a commercial interstate carrier and caused to be delivered by a commercial interstate carrier, namely Con-way Freight, according to direction thereon, medical equipment and supplies, including an "HomeFill Oxygen Compressor," which was sent and delivered by Con-way Freight from Invacare Corporation at North Ridgeville Ohio, or Cranbury Township, New Jersey, through the Western District of Missouri, to the defendant in Pittsburg, Kansas.

Invacare and Drive suffered substantial loss from the defendant's above-described scheme.

Thus, between an unknown date, but as early as March 2015, and July 2015, in the counties of Christian and Taney, within the Western District of Missouri, and elsewhere, the

4

defendant, with the intent to defraud and through the actions and scheme described therein, devised and executed a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, from Invacare and Drive, and for the purpose of executing such a scheme and artifice to defraud and deprive, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, or attempting to do so, caused to be used a commercial interstate carrier, that is Con-way Freight, in furtherance of, or in an attempt to carry out, some essential step in his scheme, all in violation of Title 18, United States Code, Section 1341.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. §1B1.3(a)(2). The defendant acknowledges, understands and agrees that all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. §1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to the sole count of the Information charging him with mail fraud in violation of 18 U.S.C. § 1341, the minimum penalty the Court may impose is probation, while the maximum penalty the Court may impose is not more than 20 years of imprisonment, a $250,000 fine, three years of supervised release, an order of restitution, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a class C felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States

5

Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable;"

b.      the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c.      in addition to a sentence of imprisonment, the Court may impose a term of supervised release of not more than three years for the offense; and that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

d.      if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of not more than two years for the charge, without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e.      the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f.      any sentence of imprisonment imposed by the Court will not allow for parole;

g.      the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

h.      the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court;

i.      The defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p) (which is applicable to this action pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) including, but not limited to a money judgment representing proceeds the defendant obtained as a result of his participation in the fraud charged in the Information;

With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenge in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture

6

constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

j.      The defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which he has or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period of March 2015 to the present. The defendant agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets. The defendant also agrees that if he sells or transfers ownership interest in any property under his control or custody between March 2015 and the time of sentencing, the proceeds from that sale will be placed in an escrow account and will be remitted to the victim as restitution. The defendant agrees that his failure to place all proceeds for any such sales into the escrow account, or transfers any assets to the control of another, such action will be considered a breach of the plea agreement and the government will be released from any and all sentencing recommendations;

k.      The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing;

l.      Within ten days of the acceptance of this plea agreement, at the request of the United States Attorney's Office, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the United States Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility;

m.      At the request of the United States Attorney's Office, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of forfeitable assets, including substitute assets, and restitution.

7.      **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to his scheme to defraud Invacare Corporation, Medical Depot, Inc. d/b/a Drive DeVilbiss Healthcare, and/or Allstate Insurance, for which it has venue and which arose out of the defendant's conduct described above.

7

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8.   **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve

8

the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9.      **Withdrawal of Plea.**   Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court.  In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible.  However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal.  The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10.      **Agreed Guidelines Applications.**   With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

a.      The Sentencing Guidelines do not bind the Court and are advisory in nature.  The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable;"

b.      The applicable Guidelines section for the offense of conviction is U.S.S.G. §2B1.1, which provides a **base offense level of seven**;

c.      The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently.  Therefore, he is entitled to at least a **two-level** reduction and, if applicable an additional **one-level** reduction, pursuant to §3E1.1(a) and (b) of the Sentencing Guidelines.  The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or

9

(2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

d.      There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

e.      The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

f.      The United States agrees not to seek an upward departure from the Guidelines or a sentence above the low-end of the applicable Guidelines range. The defendant remains free to seek a downward variance from the Guidelines or a sentence outside the Guidelines range. The agreement by the Government to not seek a sentence outside of the Guidelines is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable;"

g.      The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and,

h.      The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

11.    **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its

10

subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

      a.     oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

      b.     comment on the evidence supporting the charges in the Information;

      c.     oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and,

      d.     oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

      a.     the right to plead not guilty and to persist in a plea of not guilty;

      b.     the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

11

c.       the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d.       the right to confront and cross-examine the witnesses who testify against him;

e.       the right to compel or subpoena witnesses to appear on his behalf; and,

f.       the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial.  The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement.  The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15.     **Waiver of Appellate and Post-Conviction Rights.**

a.       The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

b.       The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence.  However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as

12

authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16.     **Financial Obligations.**     By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

a.     The Court must order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with all other uncharged related criminal activity. The defendant further agrees that the total amount of restitution reflected in this agreement, and that the Court will impose, results from the defendant's illegal conduct. The defendant agrees to pay the following restitution:

(1)     Not less than $332,000 to Invacare Corporation; and
(2)     Not less than $47,000 to Medical Depot, Inc. d/b/a Drive DeVilbiss Healthcare.

All restitution payments shall be paid by check, shall include this case number in the memo line, and shall be delivered to the Clerk's office or addressed to the Clerk's office at the following address:

United States District Court Clerk's Office
Western District of Missouri
Charles Evans Whittaker Courthouse
400 E. 9th Street, Rm. 1510
Kansas City, Missouri 64106

b.     The defendant agrees to pay restitution as ordered by the Court in any restitution order entered pursuant to this plea agreement, and that such restitution is due and payable immediately upon sentencing.

c.     The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

d.     The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

e.     The defendant hereby authorizes the United States Attorney's Office ("USAO") to obtain a credit report pertaining to him to assist the USAO in

13

evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

f. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the **Special Assessment of $100** by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

g. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

h. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

14

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

21.    **No Undisclosed Terms.**  The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22.     **Standard of Interpretation.**     The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings.  The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

TIMOTHY A. GARRISON
United States Attorney

Dated: 8/13/2020

_____
CASEY CLARK
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the Information.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines.  I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand this plea agreement and I voluntarily agree to it.

Dated: 8-13-20

_____
GEORGE F. MYERS, JR.
Defendant

I am defendant George F. Myers, Jr.'s attorney.  I have fully explained to him his rights with respect to the offense charged in the Information.  Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case.  I have carefully reviewed every part of this plea agreement with him.  To my knowledge, George F. Myers, Jr.'s decision to enter into this plea agreement is an informed and voluntary one.

Dated: 8/13/20

_____
ERICA MYNARICH
Attorney for Defendant

17